## LOUISIANA OIL REFINING CORPORATION v. WILLIAMS.*
### No. 5039.

Court of Appeal of Louisiana. Second Circuit.
May 2, 1935.

Blanchard, Goldstein, Walker & O'Quin and Robert Roberts, Jr., all of Shreveport, for appellant.

Goff & Goff, of Arcadia, Kennon & Kitchens, of Minden, L. L. Morgan and E. R. Stoker, both of Baton Rouge, and M. M. Morelock, of Haynesville, for appellee.

TALIAFERRO, Judge.

This is a concursus proceeding provoked by plaintiff wherein Wilson H. Williams, con-

tractor, Dawson & Winn, subcontractor, and its individual members, L. W. Winn and O. W. Dawson, the Louisiana Highway Commission, the receivers of the Union Indemnity Company, and J. O. Reeves, a creditor of the subcontractor, were impleaded. Williams, under a contract with the Louisiana Highway Commission, constructed 6.573 miles of gravel road in Webster parish, designated as Project No. 807–A. The Union Indemnity Company was his surety for the faithful performance of the contract and for payment of all labor and materialmen claims incurred in fulfilling same. He sublet a portion of the construction to Dawson & Winn, a corpartnership, who purchased gasoline, oil, etc., to operate its trucks, employed in the work, from plaintiff, amounting to $54.98, and from J. W. Felts, vendor of plaintiff's products, amounting to $481.53. Both accounts, with supporting affidavits, were timely registered in the mortgage records of Webster parish to evidence and preserve the statutory lien designed to secure payment of such obligations. Copies of the accounts and affidavits were delivered to the Highway Commission. The lienable character of the accounts is not questioned. Felts assigned his account with accessory rights to plaintiff. In all other respects it is recognized in this suit as being on all-fours with that originally made with plaintiff.

J. O. Reeves also had his account recorded in the mortgage records, but it is virtually conceded by his counsel that the same is not lienable. The lower court so held, and we think the ruling eminently correct. He was given personal judgment against the contractor and subcontractor.

After being apprised of the recorded claims against the funds due Williams on the contract, the Commission withheld from payment to him, and now holds, an amount sufficient to discharge the accounts of plaintiff. Its status now is merely that of stakeholder. By this suit plaintiff seeks to have the rank of all liens involved herein fixed and determined. It prays for judgment against all parties impleaded, except Reeves, for the amount of its accounts, and that the lien and privilege granted by law to secure payment thereof be recognized and enforced.

The receivers were dismissed from the case on an exception to the jurisdiction.

Aside from determining the rights of Reeves on his account against the subcontractors, the answers of all defendants tender but one issue for decision, and that is whether

*Rehearing denied June 4, 1935.

plaintiff's accounts have been extinguished by payment. The allegations of the answers on this question are as follows:

"22. Further answering your defendants aver that they had an agreement and contract with J. L. Taylor, Agent for the Louisiana Oil Refining Corporation, whereby the said corporation was to sell to defendants motor fuel, oil, gas, etc., and to take in payment thereof Louisiana Highway obligations, commonly called scrip, and that, under said agreement and contract, the items alleged to have been bought in plaintiff's petition were bought and used by your defendants, Dawson & Winn, on the project alleged to be the project on which they were used.

"23. Further answering your defendants aver that the full amount of the account with the said J. W. Felts and the Louisiana Oil Refining Corporation was paid by your defendants on April 8, 1932, and that said account was paid by the delivery to said Louisiana Oil Refining Corporation, through its agent, J. L. Taylor, of the said Louisiana Highway scrip, or obligation, to the amount of $588.02, and that a receipt was issued therefor by the said agent, J. L. Taylor, to your defendants.

"24. That the account made by your defendants for the purchase of motor supplies with said J. W. Felts and the said Louisiana Oil Refining Corporation has been paid in full by the delivery of said Louisiana Highway scrip, or obligation, to the said Louisiana Oil Refining Corporation, none of which has been returned to your defendants."

The lower court sustained defendants' plea of payment, dismissed plaintiff's suit, and ordered the inscription of its purported liens canceled. From a judgment to such effect it prosecutes appeal. Reeves did not appeal.

The record leaves no doubt that plaintiff's authorized agent at Minden, Mr. J. L. Taylor, agreed with Dawson & Winn, before they entered into the subcontract with Williams, that his company would sell to them gasoline, oil, etc., needed to operate their trucks in carrying out their contract, and would accept in payment therefor scrip (deferred warrants) of the Louisiana Highway Commission. If this agreement had not been reached, Dawson & Winn would not have made the contract with Williams, and therefore would not have purchased plaintiff's products. Attorney for plaintiff concedes that Dawson & Winn have established their contentions in this respect. He says in brief:

"Dawson & Winn say that before buying any gasoline from the plaintiff, they procured an agreement that the plaintiff would accept Highway Commission warrants, or scrip, in payment of the account; and we might as well admit here and now that the evidence preponderates in favor of their contention. After the work was completed, and apparently about the time it was accepted, they handed to the plaintiff's agent at Minden, Mr. J. L. Taylor, a Highway Commission warrant for some $50.00 more than the amount which they owed."

At the time this contract was being performed, the Commission was only paying 30 per cent. of its contracts in cash. The balance was paid in what is referred to as scrip. This was generally issued in amounts equal to the obligation of the contractor to those furnishing him with material, labor, etc. In the present case a warrant for $588.02 was issued by the Commission to Williams. He indorsed it "without recourse" and delivered it to Dawson & Winn, and they in turn delivered it to plaintiff's agent, Taylor, on April 8, 1932. It was sent to plaintiff's division credit manager, at Shreveport, who returned it to Taylor for indorsement by Dawson & Winn. They refused to do so. It was again forwarded to the Shreveport office, where it remained until July 1, nearly three months. On that date it was sent to Mr. Williams by mail in a letter reading as follows:

"We return herewith Louisiana Highway scrip No. 522–1 in the amount of $588.02.

"We are unable to accept this scrip as collateral or to hold it in any way for the reason that the scrip is endorsed without recourse. It is returned to you for your disposition."

In the meantime the value of the scrip had materially declined. So far as the record discloses, the scrip is still in Williams' possession. It has evidently not been paid by the Commission. The amount retained by it is sufficient to pay it in full. Plaintiff's learned counsel, anent the handling and returning of the scrip, says:

"The reason for returning this scrip and the circumstances under which its return was effected, present the only question of fact in the case; and the effect of this manner of handling the transaction gives rise to the only question of law."

Our interpretation of counsel's position is that they admit that the record discloses that plaintiff agreed, before Dawson & Winn incurred the accounts with it and Felts, that scrip of the Louisiana Highway Commission would be accepted by it in payment of the accounts, and that in keeping with this agreement, scrip sufficient in amount to pay for the gas was delivered to plaintiff, but that as

the scrip was returned to Williams (not to Dawson & Winn), and the proceeds thereof have not been collected and paid over to it, no payment of the accounts has been made; that the circumstances of the delivery and return of the scrip prove that it was not delivered to plaintiff in extinguishment of the' amount due it.

Taylor testified that Dawson or Winn asked him if he could get the scrip back from the Shreveport office and, replying in the affirmative, one of them asked him to send it to Williams, who he thought could collect it. Dawson denies positively that he made any such request. Winn did not testify on the point. Dawson states that Taylor, about two months after the scrip was delivered to plaintiff, informed him that they did not want it and that he then told Taylor he did not want it. It will be noted that the scrip was returned to Williams because it was endorsed by him "without récourse."

We are not convinced that the scrip was sent to Williams at the suggestion of Dawson or Winn. Even had it been so sent, that fact would not have affected the fixed status of their relation with plaintiff, as regards settlement of the accounts, because therefrom it could not reasonably be inferred that they consented to or acquiesced in reviving against themselves a liability which had been extinguished. The letter of transmittal contains no intimation that it was sent at their suggestion, but rather argues to the contrary. It says the scrip was returned because Williams had endorsed it "without recourse." It was not sent for collection, but for such disposition as Williams might wish to make of it. It is a significant fact that the scrip was returned only after the evidence of plaintiff's liens had been inscribed on the mortgage records.

Taylor issued receipt for the scrip in the following words:

"Received from Dawson & Winn scrip in $588.02 amount."

It is argued that this language reflects the intention of the parties that no absolute payment was effected by delivery of the scrip. Standing alone, such a deduction could possibly be made from the wording of the receipt, but when considered in the light of other evidence in the case, especially in that of the definitely established agreement that scrip would be accepted in satisfaction of the accounts, the force of this argument is destroyed.

The case, as we view it, simply resolves itself into whether or not an agreement, made before anything of value was sold on the faith of it, has been complied with by the promisor. We are certain it has been complied with, strictly in keeping with the original understanding of the parties thereto.

The judgment appealed from is affirmed.